IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY STEGALL,

Plaintiff,

v.

SN SERVICING CORPORATION,

Defendant.

CIVIL ACTION
NO. 16-2122

## OPINION

**Slomsky, J.**

**March 13, 2017**

## I.   INTRODUCTION

Plaintiff Anthony Stegall brings this action against Defendant SN Servicing Corporation,

alleging that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692 et seq., in its attempts to collect past due mortgage payments on Plaintiff's home. (Doc.

Nos. 3, 14.) Defendant has filed a Motion to Dismiss the Amended Complaint. (Doc. No. 15.)

For reasons that follow, the Court will grant Defendant's Motion to Dismiss. (Id.)

## II.   BACKGROUND

In 1994, Plaintiff Anthony Stegall sought to purchase a home in the suburbs of

Philadelphia, Pennsylvania.[1] (Doc. No. 15 at 2.) Like most buyers, Plaintiff needed to borrow

---

[1] When considering a motion to dismiss, the court must "accept all factual allegations in the
complaint as true and view them in the light most favorable to the plaintiff." Buck v.
Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). The court also may consider
certain documents not made part of the complaint.   As noted in Miller v. Cadmus
Communications:

Ordinarily, a court's review of a motion to dismiss is limited to the contents of the
complaint, including any attached exhibits.   However, evidence beyond a
complaint which the court may consider in deciding a 12(b)(6) motion to dismiss
includes public records (including court files, orders, records and letters of official

1

money from a bank in order to have sufficient funds to purchase his desired home, located at 212 Maple Terrance, Ardmore, Pennsylvania (referred to as "the property"). (Id.) On February 7, 1994, Plaintiff borrowed money from Regent National Bank. (Id.) He entered into an adjustable rate note with the bank, which was secured by a recorded mortgage on the property. (Doc. No. 15, Ex. A.) According to the terms of the note and mortgage, Plaintiff was obligated to pay $51,300, plus interest, to the creditor over thirty years or until the debt was fully paid off. (Id.)

The mortgage on Plaintiff's home was assigned from Regent National Bank to other creditors. (Doc. No. 15, Ex. B.) For instance, on November 19, 2007, the mortgage was assigned to Wachovia National Bank Association, as Trustee of the Security National Mortgage Loan Trust 2004-2. (Id.) On March 26, 2015, the mortgage was reassigned from Wachovia to U.S. Bank National Association, as Trustee of the Security National Mortgage Loan Trust 2004-2. (Id.) Defendant SN Servicing Corporation is the servicer of the mortgage on behalf of U.S. Bank, as Trustee of the Security National Mortgage Loan Trust 2004-2.[2] (Id.)

---

actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.

No. 09-2869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1-2 (3d Cir. 1995)); see also Doe v. Hesketh, 77 F. Supp. 3d 440, 445 (E.D. Pa. 2015). Here, this Court supplemented the facts in the Amended Complaint with Defendant's Motion to Dismiss.

[2] The Consumer Financial Protection Bureau distinguishes a mortgage lender from a mortgage servicer as follows:

Your mortgage lender is the financial institution that loaned you the money. Your mortgage servicer handles the day-to-day tasks of managing your loan. Your loan servicer typically processes your loan payments, responds to borrower inquiries, keeps track of principal and interest paid, manages your escrow account, and may initiate foreclosure if you miss too many loan payments. Your servicer may or may not be the same company that gave you your loan.

Plaintiff defaulted on his monthly mortgage payments. (Doc. No. 15 at 2-3.) On January 27, 2016, SN Servicing Corporation mailed Plaintiff a notice informing him that he was in default. (Doc. No. 14, Ex. 1.) This initial communication is known as an Act 91 Notice and is required to be sent under the provisions of the Pennsylvania Foreclosure Prevention Act, 35 Pa. Const. Stat. Ann. § 1680.401c, which was enacted to establish procedures designed to assist Pennsylvania residents in avoiding foreclosure. (Doc. No. 14, Ex. 1.) On February 9, 2016, Plaintiff mailed a notice to SN Servicing Corporation, explaining that he disputed the debt and requesting verification. (Doc. No. 14, Ex. 2.) In response, on March 10, 2016, SN Servicing Corporation mailed Plaintiff a letter which identified U.S. Bank, as Trustee of the Security National Mortgage Loan Trust 2004-2, as the creditor, and SN Servicing Corporation as the servicer of the mortgage. (Doc. No. 15, Ex. A.) Defendant's letter also verified the debt by including copies of the original note, mortgage, and a payoff statement. (Id.)

On May 3, 2016, Plaintiff initiated this action pro se against SN Servicing Corporation in this Court. (Doc. No. 1.) He filed an Amended Complaint on November 11, 2016. (Doc. No. 14.) On November 22, 2016, Defendant filed a Motion to Dismiss the Amended Complaint. (Doc. No. 15.) Plaintiff filed a response in opposition to Defendant's Motion. (Doc. No. 21.) The Motion is now ripe for review.[3]

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of

---

CONSUMER FINANCIAL PROTECTION BUREAU, *What's the difference between a mortgage lender and a servicer?*, http://www.consumerfinance.gov/askcfpb/198/whats-the-difference-between-a-mortgage-lender-and-a-servicer.html (last visited Mar. 10, 2017).

[3]   In ruling on the Motion, the Court has considered the Amended Complaint (Doc. No. 14), the Motion to Dismiss the Amended Complaint (Doc. No. 15), and Plaintiff's Response in Opposition (Doc. No. 21).

the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

4

has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Pleadings submitted by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). However, a pro se Plaintiff's complaint must do more than allege his entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.    ANALYSIS

Plaintiff initiated this action pro se against Defendant SN Servicing Corporation alleging that it violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., in its attempts to collect the outstanding debt owed when Plaintiff defaulted on his mortgage payments.    (Doc. No. 14.)    Plaintiff contends that Defendant's correspondence violated provisions of the FDCPA, including Sections 1692g, 1692d, 1692e, 1692f, and 1692j.[4] (Id.) But in viewing the Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to plausibly allege that such violations occurred.

---

[4]    Plaintiff alleges violations of several provisions of the FDCPA. This Court has interpreted the Amended Complaint to allege separate claims for each provision of the FDCPA that Plaintiff claims was violated.

**A.    Plaintiff Has Not Plausibly Alleged a Violation of 15 U.S.C. § 1692g**

Plaintiff's main contention is that Defendant violated Section 1692g when it mailed Plaintiff a letter verifying the debt, which included copies of the original note and mortgage on the property, and a payoff statement for the outstanding obligation.  (Id. at ¶¶ 1, 34.)

Congress enacted the Fair Debt Collection Practices Act to provide a remedy for victims of abusive, deceptive, and unfair collection practices by debt collectors.  Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 996-97 (3d Cir. 2011).  To this end, Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA.  Caprio v. Healthcare Recovery Group, LLC, 709 F.3d 142, 148 (3d Cir. 2013).  Provisions of the FDCPA must be broadly construed to give full effect to this intention.[5]

To provide consumers with "adequate notice" of their rights under Section 1692g(a), a debt collector must include the following information in its initial communication to a debtor, or in a communication to be sent within five days after the initial communication:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

---

[5]  Courts are required to construe the FDCPA's provisions from the perspective of the least sophisticated debtor.  Caprio, 709 F.3d at 148.  The least sophisticated debtor standard is lower than "simply examining whether particular language would deceive or mislead a reasonable debtor."  Wilson v. Quadramed, 225 F.3d 350, 354 (3d Cir. 2000).  It is designed to protect naïve and even gullible individuals, but does not go so far as "to provide solace to the willfully blind or non-observant."  Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008).  Rather, the least sophisticated debtor standard works to "prevent[ ] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care."  Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006).  Most importantly, under this standard, the debtor is still expected to read notices in their entirety.  Caprio, 709 F.3d at 149.

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). If a debtor disputes the debt contained in the initial communication,

Section 1692g(b) establishes that the debt collector must cease all collection efforts until it mails

to the debtor the debt verification. Wilson, 225 F.3d at 354. Section 1692g(b) states as follows:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

15 U.S.C. § 1692g(b). The statute does not specify what the process of "verification" requires.

Id. Courts have found, however, that providing an itemized accounting of the disputed debt or

explaining the nature of the transaction that led to incurring the debt sufficiently informs the

debtor of his obligation. See Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) (holding

that a "bill and computer printout" adequately verified the debt because the documents provided

7

to the debtor "were sufficient to inform him of the amount of his debts, the services provided, and the dates on which the debts were incurred."); see also Dixon v. Stern & Eisenberg, PC, 652 F. App'x 128, 133 (3d Cir. 2016) (citation omitted) (noting that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt."); Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 785-85 (6th Cir. 2014) (finding that the verification should include "the date and nature of the transaction that led to the debt"); Jarzyna v. Home Properties, L.P., 114 F. Supp. 3d 243, 263 (E.D. Pa. 2015) (finding that the debt collector sufficiently informed the debtor of his obligations by mailing a "Statement of Deposit," which "itemized the charges that made up the total payment demand.").

Here, Plaintiff argues that SN Servicing Corporation did not adequately verify the debt as required in Section 1692g(b). (Doc. No. 14 at ¶¶ 1, 34.) However, Plaintiff has not pled plausible facts in the Amended Complaint showing that Defendant's letter did not adequately verify the debt. As previously noted, on January 27, 2016, Defendant mailed an initial notice to Plaintiff stating that he had defaulted on his mortgage payments. (Doc. No. 14, Ex. 1.) This notice contained a list of each monthly payment Plaintiff failed to make. (Id.) In response, Plaintiff mailed a notice of dispute to Defendant. (Doc. No. 14, Ex. 2.) On March 10, 2016, SN Servicing Corporation mailed Plaintiff a letter to verify the debt. (Doc. No. 15, Ex. A.) The letter identified U.S. Bank, as Trustee of the Security National Mortgage Loan Trust 2004-2, and SN Servicing Corporation as the creditor and servicer of the mortgage. (Id.) It also included copies of the original adjustable rate note and mortgage. (Id.) Importantly, it contained a payoff

8

statement, identifying the principal balance owed, the interest accrued, and the total payoff amount.  (Id.)

Thus, through its correspondence with Plaintiff, Defendant provided copies of the original note and mortgage, evidencing the transaction that led to incurring the debt.  Defendant also provided a detailed payoff statement, which accounted for the amount Plaintiff currently owed.  Defendant's correspondence, therefore, adequately verified the debt.  Plaintiff's claim that Defendant violated Section 1692g(b) will be dismissed.

**B.    Plaintiff Has Not Plausibly Alleged a Violation of 15 U.S.C. § 1692d**

Plaintiff contends that Defendant engaged in harassing and abusive tactics in attempting to collect the outstanding debt on the property.  (Doc. No. 14 at ¶ 47.)  Section 1692d prohibits debt collectors from using methods which will "harass, oppress, or abuse" the debtor.  15 U.S.C. § 1692d.  This Section provides as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> >
> > (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> >
> > (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> >
> > (4) The advertisement for sale of any debt to coerce payment of the debt.
> >
> > (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

Id. Generally, "whether conduct harasses, oppresses, or abuses will be a question for the jury." Regan v. Law Offices of Edwin A. Abrahamsen & Assocs., P.C., No. 08-5923, 2009 WL 4396299, at *6 (E.D. Pa. Dec. 1, 2009).  However, the conduct that the plaintiff alleges must still meet a threshold level where the facts support a reasonable inference that he has made a plausible claim to relief under Section 1692d.  Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d 589, 596 (E.D. Pa. 2012).  For example, in Hoover, the consumer's allegations that the debt collector repeatedly asked her personal questions in telephone calls, including whether she was married and how many dependents she had, were insufficient to state a claim for violation of Section 1692d.  888 F. Supp. 2d at 596-97.  Additionally, in Christy v. EOS CCA, a debt collector's unintentional sending of a letter to the workplace of the debtor's mother and addressed to the debtor's father was not conduct that would naturally tend to harass, oppress, or abuse in violation of Section 1692d.  905 F. Supp. 2d 648, 655 (E.D. Pa. 2012).

Here, Plaintiff has not stated plausible facts showing Defendant harassed, abused, or oppressed him in its collection methods.  Plaintiff alleges that Defendant sent the initial notice and then response after he disputed debt.  (Doc. No. 14 at ¶ 16.)  Plaintiff makes vague assertions that these two letters threatened foreclosure on the property.  (Id. at ¶ 21.)  Although the initial communication mentioned the possibility of foreclosure, it is a notice that is required by the Pennsylvania Foreclosure Prevention Act (also known as "Act 91"), 35 Pa. Const. Stat. Ann. § 1680.401c.  The purpose of Act 91 is, among other things, to "give a homeowner a chance to apply for a state loan to help pay off the mortgage in situations where the homeowner cannot meet his mortgage payments because of unemployment, before foreclosure occurs."  Benner v. Bank of America, N.A., 917 F. Supp. 2d 338, 361-62 (E.D. Pa. 2013) (citations omitted).  Here,

10

the initial Act 91 Notice mailed to Plaintiff was meant to not only inform him of the outstanding

mortgage payments, but also to assist him in managing his debt to avoid foreclosure. (Doc. No.

15, Ex. A.) It was not, as Plaintiff contends, meant to "harass, abuse, or oppress" him. (Doc.

No. 14 at ¶ 47.) The facts pled, taken together, do not plausibly state a claim for harassment,

abuse or oppression suffered from Defendant's debt collection methods. Therefore, this claim

will be dismissed.

### C.    Plaintiff Has Not Plausibly Alleged a Violation of 15 U.S.C. § 1692e

Plaintiff contends that Defendant made false and misleading representations in its attempt

the collect the outstanding debt on the property. (Id.) Section 1692e of the FDCPA forbids the

use of "any false, deceptive, or misleading representation . . . in connection with the collection of

any debt." 15 U.S.C. § 1692e. Several different illegal practices are listed in Section 1692e,[6]

---

[6] Section 1692e provides as follows:

A debt collector may not use any false, deceptive, or misleading representation or
means in connection with the collection of any debt. Without limiting the general
application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is
vouched for, bonded by, or affiliated with the United States or any State,
including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully
received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an
attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will
result in the arrest or imprisonment of any person or the seizure,
garnishment, attachment, or sale of any property or wages of any person

unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

    (A) lose any claim or defense to payment of the debt; or

    (B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

such as making false statements about "the character, amount, or legal status of any debt" and "threat[ing] to take any action that cannot legally be taken or that is not intended to be taken." Id.  Although the list is not exhaustive, Section 1692e clearly seeks to curb material misrepresentations from being made during the collection of a debt. Benner, 917 F. Supp. 2d at 361-62.

A statement is misleading or deceptive when "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Rosenau v. Unifund Corp., 539 F.3d 218, 222 (3d Cir. 2008) (quotations omitted).  Moreover, only those statements that are material, meaning "capable of influencing the decision of the least sophisticated debtor," will violate Section 1692e. Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015). For example, in Jensen, a plaintiff alleged that a subpoena was false and misleading, in violation of Section 1692e, because the subpoena contained an incorrect name on the signature line for the clerk of the Superior Court. Id.  This was technically a false statement, but the Third Circuit held that it was not actionable because it was not material, that is, "[i]t could not possibly have affected the least sophisticated debtor's ability to make intelligent decisions." Id. at 422.

Similarly, in Simon v. FIA Card Servs. NA, a plaintiff complained that a notice sent by a creditor contained a false statement, specifically, that the notice had been sent to both the debtor

---

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

15 U.S.C. § 1692e.

and his bankruptcy attorney, when in fact the notice had only been sent to the attorney.  639 F.

App'x 885, 889 (3d Cir. 2016).  In addition, the plaintiff argued that the notice omitted required

language from Rule 45 that rendered the communications deceptive and misleading in violation

of Section 1692e.  Id.   The Third Circuit held that although the notice contained one false

statement and was technically incomplete, these defects "did not render [the communication]

false, deceptive, or misleading even to the least sophisticated debtor."  Id.

Like Jensen and Simon, the Amended Complaint is devoid of plausible facts showing

false, deceptive, or misleading statements made in Defendant's letters to Plaintiff.  Plaintiff

alleges that SN Servicing Corporation used "deceptive collection tactics" to "steal" his property.

(Doc. No. 14 at ¶ 37.)   He also contends that Defendant used "false and misleading

representation[s] . . . in connection with the collection of an alleged debt."  (Id. at ¶ 47.)  The

Amended Complaint does not explain, for instance, which statements in the letters were false,

misleading, or deceptive.  Nor does it set forth how such statements affected his ability to dispute

the debt or make intelligent decisions regarding his obligations.  Rather, the Amended Complaint

merely recites statutory language found in Section 1692e and makes cursory legal conclusions.

(Id. at ¶¶ 37, 47.)  Without plausible facts, Plaintiff's Section 1692e claim must be dismissed.

## D.      Plaintiff Has Not Plausibly Alleged a Violation of 15 U.S.C. § 1692f

Plaintiff argues that Defendant used unfair debt collection practices during its

correspondence with Plaintiff, in violation of Section 1692f of the FDCPA.  (Id. at ¶ 47.)  Section

1692f prevents debt collectors from using "unfair or unconscionable means to collect or attempt

to collect any debt."  15 U.S.C. § 1692f.  This Section provides as follows:

> A debt collector may not use unfair or unconscionable means to collect or attempt
> to collect any debt. Without limiting the general application of the foregoing, the
> following conduct is a violation of this section:

14

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

> (B) there is no present intention to take possession of the property; or

> (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

Id. "A complaint fails to state a claim under Section 1692f unless it identifies some misconduct by the debt collector other than that which provides the basis for the plaintiff's claims under

other provisions of the FDCPA." <u>Hoover v. Midland Credit Mgmt., Inc.</u>, No. 10-6856, 2012 WL 1080117, at *8 (E.D. Pa. Mar. 30, 2012). For example, in <u>Kryluk v. Northland Group, Inc.</u>, the district court dismissed the plaintiff's complaint because he failed to "identify any misconduct" by the defendant that could constitute the foundation for a Section 1692f claim. No. 14-3198, 2014 WL 6676728, at *9-10 (E.D. Pa. Nov. 25, 2014).

Like the plaintiff in <u>Kryluk</u>, Plaintiff here has failed to plead any fact supporting his allegation that Defendant used unfair or unconscionable means to collect the outstanding debt at issue. His Amended Complaint merely states that Defendant used "unfair or unconscionable means to collect or attempt to collect a debt." (Doc. No. 14 at ¶ 47.) This threadbare formulaic recitation of the statute, without actual facts demonstrating any unfair or unconscionable methods used, is insufficient to state a claim for relief under Section 1692f. This claim will be dismissed.

### E.     Plaintiff Has Not Plausibly Alleged a Violation of 15 U.S.C. § 1692j

Plaintiff contends that Defendant violated Section 1692j when it mailed misleading documents to Plaintiff's address. (<u>Id.</u>) Section 1692j states:

> (a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.
>
> (b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

<u>Id.</u> This provision prohibits forms that create the false impression that some third party, other than the creditor or its collector, is involved in the collection of the debt at issue. <u>Crenshaw v. Computex Info. Servs., Inc.</u>, No. 10-1493, 2010 WL 2951506, at *5 (D.N.J. Jul. 21, 2010). "It is

16

designed to address the abusive practice of 'flat rating,' in which a collection agency sells to creditors 'dunning letters' bearing the agency's letterhead but is not actually involved in the collection of the debt, thus giving the debtor a misleading sense of urgency regarding payment." Pineda v. West Asset Mgmt., Inc., No. 11-5191, 2011 WL 6372528, at *2 (D.N.J. Dec. 20, 2011) (citations omitted); see also Anthes v. Transworld Sys. Inc., 765 F. Supp. 162, 167-68 (D. Del. 1991) (discussing the legislative purpose of Section 1692j, which was enacted in part to prevent flat rating).

In the Amended Complaint, however, Plaintiff does not allege any fact that would support his theory that an entity other than the true creditor or its debt collector was involved in the collection of the debt. The Amended Complaint states that "[a]ll times prior to [Plaintiff] bringing this action defendant has been masquerading or impersonating the acts of a creditor." (Doc. No. 14 at ¶ 15.) However, SN Servicing Corporation clearly represented in its letters that it is a "debt collector" within the meaning of the FDCPA, and was attempting to collect the outstanding debt for the holder of the mortgage recorded on Plaintiff's home. (Doc. No. 15, Ex. 3.) For example, its letter stated that "this communication is from a debt collector" and that payments should be made to "Security National Mortgage Loan Trust 2004-02," the creditor. (Id.) The Amended Complaint, therefore, does not state any plausible facts demonstrating that someone other than the creditor, which is the holder of the mortgage, or its debt collector attempted to collect the debt at issue. Plaintiff's Section 1692j claim, therefore, will be dismissed.[7]

---

[7]   Although Plaintiff has not requested that he be granted leave to further amend the Amended Complaint, the Court will not grant him leave to amend because doing so would be futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [he] has leave to amend . . . unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103,

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to be Dismiss (Doc. No. 15) will be granted.  An appropriate Order follows.

---

108 (3d Cir. 2002) (emphasis in original).  "[A] district court need not grant leave to amend a complaint if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  Kundratic v. Thomas, 407 F. App'x. 625, 630 (3d Cir. 2011) (quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).  Here, Plaintiff has not alleged plausible claims against Defendant and no amendment of the Amended Complaint could cure the defects. Consequently, amending the Amended Complaint would be futile and leave to amend will not be granted.